IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN ROLLER COMPANY, LLC, ) | |
| ) | |
| Plaintiff / Counter-Defendant, ) | |
| ) | No.   05 C 3014 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| FOSTER-ADAMS LEASING, LLP, ) | |
| FOSTER- ADAMS LLP, RUSSELL M. FOSTER, ) | |
| and LARRY H. ADAMS, ) | |
| ) | |
| Defendants / Counter-Plaintiffs. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff American Roller Company, LLC ("American Roller") filed a multi-count complaint against defendants Foster-Adams Leasing, LLP ("FA Leasing"), Foster-Adams LLP ("Foster-Adams"), Russell M. Foster ("Foster") and Larry H. Adams ("Adams").  Defendants have brought counter-claims against plaintiff.  All of these claims and counter-claims relate to the sale of Champion Roller, Inc. ("Champion Roller") to plaintiff.  Plaintiff contends that defendants breached an agreement relating to that sale and committed statutory and common law fraud, and defendants have counterclaimed that plaintiff failed to make interest payments due as part of the transaction.  Defendants have filed a motion for summary judgment on Count V of the first amended complaint, which alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.* ("ICFA" or "Act").  For the reasons stated below, the court grants defendants' motion.

## FACTS

Plaintiff, American Roller Company, LLC, a Delaware limited liability company with its principal place of business in Wisconsin, manufactures and services rollers for the metal and converting industries. In 2001, American Roller Holding Company, LLC ("ARHC") purchased plaintiff. CM Acquisitions owns approximately 2 to 3 percent of the shares of ARHC. One of the principals of CM Acquisitions, Charles Tasch ("Tasch"), subsequently became the President and Chief Executive Officer of plaintiff, and served in this capacity at the time of the sale of Champion Roller.

Champion Roller, a South Carolina corporation, also manufactures and services rollers for the metal, converting and paper industries. Defendants Adams and Foster created Champion Roller and, prior to the sale to plaintiff, owned all of the issued and outstanding shares of common stock of Champion Roller and defendant FA Leasing. Defendant FA Leasing owned all of Champion Roller's assets and equipment.

In May of 2003, Tasch approached Foster to discuss purchasing Foster's interest in Champion Roller. After this discussion, plaintiff obtained documents regarding Champion Roller's finances and business operations, inspected Champion Roller's equipment and machinery, and interviewed several of Champion Roller's customers. On October 2, 2003, plaintiff, Champion Roller, and defendants FA Leasing, Foster and Adams entered into a Purchase Agreement[1] under which Foster and Adams sold to plaintiff their shares of common stock in Champion Roller and their issued and outstanding equity interests in Foster-Adams and FA Leasing. Plaintiff agreed to pay: (1) $600,000 in cash at closing for the machinery,

---

[1]The parties later agreed to amend the Purchase Agreement to add Foster-Adams as a party.

equipment and other assets owned by defendants Foster-Adams and FA Leasing; (2) the fair market value of the machinery and equipment owned by Champion Roller; and (3) $400,000 for 51% of the shares of Champion Roller.  In return, Champion Roller agreed to repurchase the remaining 49% of the shares from defendants Foster and Adams and guarantee certain debt that Champion Roller owed to defendants Foster and Adams in the form of subordinated notes.

In the Purchase Agreement, defendants made several representations and warranties, including: (1) the absence of undisclosed liabilities of Champion Roller; (2) the commercial suitability of all products manufactured, sold or delivered by Champion Roller; (3) the good condition of all of Champion Roller's assets; (4) the absence of any reason to believe that any material customer of Champion Roller would stop or materially decrease its purchasing rate; (5) the truthfulness of all material facts concerning the Purchase Agreement; and (6) the absence of any fact, event or circumstance that could reasonably be expected to have a material adverse effect on plaintiff.  Defendants Foster and Adams agreed to indemnify plaintiff, Champion Roller and their affiliates for losses sustained from any misrepresentation or breach of representation or warranty made by defendants Foster or Adams.

Following the acquisition, plaintiff merged Champion Roller into its operations, although plaintiff separately accounted for sales and expenses related to Champion Roller's pre-acquisition operations.  Subsequently, plaintiff incurred unexpected costs because: (1) machinery and equipment purchased from Champion Roller did not perform to specifications; (2) Champion Roller's facility in Atlanta, Georgia required clean-up; (3) several product claims and complaints were pending against Champion Roller prior to the sale; (4) defendant Foster misrepresented the value of the company; (5) Champion Roller failed to disclose outstanding tax liability; and (6)

inventory remained unsold. On October 15, 2004, plaintiff provided a written claim for indemnification to defendants Foster and Adams. In a letter dated December 28, 2004, Foster and Adams formally denied and refused the demand for indemnification.

## DISCUSSION

Motion for Summary Judgment

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

Count V of the complaint alleges a violation of the ICFA. Defendants have moved for summary judgment on this count because (1) plaintiff is not a "consumer" under the ICFA, and (2) the sale of Champion Roller to plaintiff is not the type of transaction the Act was designed to protect.

The ICFA prohibits the use of deceptive acts or practices in the conduct of trade or commerce.[2] 815 Ill. Comp. Stat. 505/2. Under the Act, a consumer is defined as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. 505/1(e). Under the Act, a "consumer" may be a corporation or trust. 815 Ill. Comp. Stat. 505/1(c). The term "merchandise" means "any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services." 815 Ill. Comp. Stat. 505/1(b).

Defendants argue that they are entitled to summary judgment on Count V because plaintiff is not a consumer. As the parties agree, corporations may be consumers under the ICFA. 815 Ill. Comp. Stat. 505/1(c). A corporation has standing as a consumer under the ICFA, however, only when it "is a consumer of the other business's product." Lefebvre Intergraphics, Inc. v. Sanden Mach., 946 F. Supp. 1358, 1368 (N.D. Ill. 1996). In the instant case, plaintiff was

---

[2]Pursuant to 815 Ill. Comp. Stat. 505/1(f), the terms "trade" and "commerce" mean:

> the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of [Illinois].

not a consumer of defendants' "product," which was resurfaced rollers. Instead, plaintiff purchased the equipment that defendants had previously used in making their product. Had plaintiff purchased the equipment from a business that actually sold such equipment as its end product (see, e.g., Lefebvre, in which plaintiff purchased printing presses from the defendant manufacturer of printing presses), plaintiff would qualify as a consumer. The mere purchasing of assets from another corporation, though, does not establish plaintiff as a consumer, and no court has ever broadened the reach of the ICFA to cover a corporate acquisition.[3]

Defendants also argue that they are entitled to summary judgment because the dispute between plaintiff and defendants does not implicate general consumer protection concerns. Under the ICFA, when a dispute involves two business that are not consumers of each other's products or services, plaintiff can bring a claim under the ICFA if it meets the "consumer nexus test" by "alleging that the conduct involves trade practices directed to the market generally or otherwise relates to consumer protection issues." Athey Products Corp. v. Harris Bank Roselle, 89 F.3d 430, 436 (7th Cir. 1996). See also Peter J. Hartmann Co. v. Capital Bank & Trust Co., 296 Ill. App. 3d 593, 604 (1st Dist. 1998).

As Illinois courts have held,

> To sufficiently establish an implication of consumer protection concerns, [a] plaintiff[] must plead and otherwise prove: (1) that [its] actions were akin to a

---

[3]This same rationale applies to plaintiff's purchase of stock, because defendants' stock was not their product, but only an asset sold to plaintiff as an incident of the sale of defendants' business. Stock and securities may be considered "merchandise" only when sold as a business's "product." See, e.g., Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp., 204 F. Supp. 2d 1120, 1124 (N.D. Ill. 2002) (securities are "merchandise" when purchased from a specialty finance company); Heinhold Commodities, Inc. v. McCarty, 513 F. Supp. 311, 313 (N.D. Ill. 1979) (commodities futures are "merchandise" when purchased from commodities futures brokers).

6

> consumer's actions to establish a link between [it] and consumers; (2) how
> defendant's representations...concerned consumers other than [plaintiff]; (3) how
> defendant's particular breach of [contract] involved consumer protection
> concerns; and (4) how the requested relief would serve the interests of consumers.

Brody v. Finch Univ. of Health Sciences / The Chicago Medical School, 298 Ill. App. 3d 146, 161 (2d Dist. 1998).

In the instant case, plaintiff has not pled or alleged a single fact indicating that the transaction between plaintiff and defendants implicates consumer protection concerns or would serve the interests of consumers other than plaintiff. Plaintiff's claim under the ICFA does not create a genuine issue of material fact, and the court grants defendant's motion for summary judgment as to Count V.

Motion to Strike L.R. 56.1 Statement of Additional Undisputed Material Facts

Defendants move to strike plaintiff's L.R. 56.1 Statement of Additional Undisputed Material Facts, alleging that plaintiff submitted facts irrelevant to the disposition of Count V of the complaint. The additional facts alleged by plaintiff are not material to the disposition of Count V and do not relate to whether plaintiff presents a genuine issue of material fact under the ICFA. Instead, they go to the merits of plaintiff's other claims. (See, e.g., paragraphs 17-20, discussing machinery purchased from defendants that required maintenance.) Because the additional facts are irrelevant to Count V, the court grants defendant's motion to strike.

## CONCLUSION

For the reasons stated above, the court grants defendant's motion for summary judgment as to Count V and the motion to strike plaintiff's L.R. 56.1 Statement of Additional Undisputed Material Facts. This matter is set for a report on status February 13, 2007, at 9:00 a.m.

**ENTER: February 6, 2007**

_____
**Robert W. Gettleman**
**United States District Judge**